UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 12-50145-01-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING MOTION |
| vs. | ) | FOR NEW TRIAL |
| | ) | |
| WILLIAM CLIFFORD, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

On May 17, 2013, a jury found defendant William Clifford guilty of one count of simple assault in violation of 18 U.S.C. § 113(a)(5) and one count of assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6). (Docket 72). Mr. Clifford moved the court for a new trial pursuant to Fed. R. Crim. P. 33. (Docket 103). The government resists the motion. (Docket 110). On April 30, 2014, the court held an evidentiary hearing on the motion. (Docket 127). For the reasons set forth below, the court denies Mr. Clifford's motion for a new trial.

**PROCEDURAL HISTORY**

On October 23, 2012, Mr. Clifford and King Martinez were indicted for aiding and abetting each other in an assault with a dangerous weapon using shod feet in violation of 18 U.S.C. §§ 113(a)(3), 1153 and 2. A second count charged assault resulting in serious bodily injury in violation of

18 U.S.C. §§ 113(a)(6), 1153 and 2. (Docket 1). The defendants were charged with assaulting Kealey Twiss ("Ms. Twiss") on or about October 16, 2012. Id.

A jury trial commenced on May 14, 2013, and concluded on May 17, 2013. (Docket 74). The jury found Mr. Martinez not guilty of both principal offenses and the lesser included offenses of simple assault and assault by striking, beating or wounding. (Docket 73). The jury found Mr. Clifford not guilty of assault with a dangerous weapon but guilty of simple assault and assault resulting in serious bodily injury. (Docket 72).

On July 10, 2013, Mr. Clifford, *pro se*, filed an *ex parte* motion for a new attorney and new trial. (Docket 78). On July 15, 2013, Magistrate Judge Veronica L. Duffy granted Mr. Clifford's motion to dismiss his court-appointed attorney, Ellery Grey, and appointed attorney Murl Woods to represent the defendant. (Dockets 80, 81 & 82).

Mr. Clifford asserts he is entitled to a new trial on the basis of newly discovered evidence and ineffective assistance of counsel at trial. (Docket 103). Mr. Clifford claims trial counsel was ineffective because Mr. Grey (1) failed to investigate and prepare a defense; and (2) engaged in improper conduct during the course of trial. Id. at pp. 3-7. Mr. Clifford argues the motion was filed in good faith and, because of excusable neglect, his new trial motion should be considered as timely filed even though the date of filing the motion was beyond the fourteen days required under Fed. R. Crim.

2

P. 33.  Id. at pp. 7-9.  While the government resists defendant's motion for a new trial, it does not do so on the basis of untimeliness.  (Docket 110).

## ANALYSIS

Fed. R. Crim. P. 33(a) gives the district court authority to vacate a judgment and grant a new trial in the interest of justice.  The decision to grant or deny a Rule 33 motion "is within the sound discretion of the [district] court."  United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002).  The court's discretion is both broad and limited.  Id.  It is broad to the extent the court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." Id. (citation and internal quotation marks omitted).  Additionally, "the court need not view the evidence most favorably to the verdict."  United States v. Worman, 622 F.3d 969, 977 (8th Cir. 2010); United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000) (In determining whether to grant a Rule 33 motion, "the court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses.").  The court's discretion is limited to the extent the court must allow the jury's verdict to stand unless it determines a miscarriage of justice will occur.  Worman, 622 F.3d at 977.

### TIMELINESS OF MOTION

A motion for new trial based "on newly discovered evidence must be filed within 3 years after the verdict . . . ."  Fed. R. Crim. P. 33(b)(1).  A

motion for new trial based on any other reason "must be filed within 14 days after the verdict . . . ." Fed. R. Crim. P. 33(b)(2). A motion for new trial is procedurally barred if not asserted within the 14-day limit of Fed. R. Crim. P. 33 unless the court finds excusable neglect. Fed. R. Crim. P. 45(b)(1)(B).

"Under [Rule] 45(b)(1)(B), a court may extend the deadline for the filing of a new trial motion after the time expires if the movant failed to act because of excusable neglect." United States v. Boesen, 599 F.3d 874, 879 (8th Cir. 2010). There are four factors the court should consider to determine whether a late filing is the result of excusable neglect: "(1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." Id. (referencing Stutson v. United States, 516 U.S. 193, 196-98 (1996) (internal brackets omitted). The ultimate determination of whether a neglectful act is excusable "is . . . an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395 (1993).

Factors in this case which support a finding of excusable neglect include:

1.      The verdict was entered on May 17, 2013.  (Docket 72).

2.      The sentencing scheduling order was entered on May 23, 2013, setting sentencing for September 27, 2013.  (Docket 77).

3.      On July 10, 2013, Mr. Clifford, *pro se*, filed an *ex parte* motion seeking a new attorney and new trial. (Docket 78).

4.      On July 15, 2013, Judge Duffy conducted a hearing on Mr. Clifford's request for new counsel.  (Docket 80).  Judge Duffy granted Mr. Clifford's motion.  Id.

5.      On July 16, 2013, Judge Duffy appointed Attorney Woods to represent Mr. Clifford.  (Docket 82).  The United States was ordered to "re-provide" discovery to Ms. Woods.  Id.

6.      On August 5, 2013, Attorney Woods filed an *ex parte* motion for preparation of the trial transcripts. (Docket 84).

7.      On September 19, 2013, Attorney Woods filed a motion for continuance because the trial transcripts would not be completed by the September 27, 2013, sentencing date.  (Docket 86). Ms. Woods requested a continuance as the transcripts were needed "to prepare any possible post-trial motions . . . ." Id. at p. 2.

8.      That same day, September 19, 2013, the court granted the motion for continuance and rescheduled sentencing for November 12, 2013. (Docket 87).

9.      On September 30, 2013, Attorney Woods filed an *ex parte* motion requesting the appointment of an investigator.  (Docket 89).

10.     The motion for appointment of an investigator was approved by the court on October 18, 2013, and by

Chief Judge Riley of the United States Court of
Appeals for the Eighth Circuit on October 29, 2013.
(Docket 91).

11. Robert Dawson was appointed as Attorney Woods'
investigator on November 14, 2013.  (Docket 92).

12. On November 14, 2013, Attorney Woods filed a
second motion for a continuance.  (Docket 93).  In
addition to waiting for the trial transcripts, Ms.
Woods wanted additional time to allow Mr. Dawson
to complete his investigation to allow Mr. Clifford
"to make a decision on how he wants to proceed . . .
prior to sentencing."  Id. at p. 2.

13. The trial transcripts were filed on January 29,
2014.  (Dockets 96-100).

14. On February 11, 2014, Attorney Woods filed the
motion for new trial.  (Docket 103).

"In most cases, litigants do not raise ineffective assistance of counsel

allegations on direct appeal, but instead through collateral proceedings

under 28 U.S.C. § 2255. . . . Except where a miscarriage of justice would

obviously result or the outcome would be inconsistent with substantial

justice, ineffective assistance of counsel issues are more appropriately

raised in collateral proceedings because they normally involve facts outside

the original record . . . ."  United States v. Long, CR 09-50051-01-KES, 2012

WL 1190254 at *3 (D.S.D. Apr. 9, 2012), aff'd, 721 F.3d 920 (8th Cir. 2013),

cert. denied, 134 S. Ct. 448 (2013) (other internal citations and quotation

marks omitted).  "When ineffective assistance of counsel claims are pursued

on direct appeal, they are presumptively dismissible, and virtually all will be

6

dismissed. . . . There is an exception to that general rule when the record is fully developed in the district court. . . ." Id.  "The Second Circuit Court of Appeals has found 'that when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding.' " Id. (citing United States v. Brown, 623 F.3d 104, 113 (2d Cir. 2010)).  "The Second Circuit determined that '[b]ecause [defendant] raised his ineffective assistance claim after the jury convicted him but before sentence was imposed, we agree with the district court that a habeas petition pursuant to 28 U.S.C. § 2241 was not "the proper vehicle" by which to advance his claim.' " Id. (citing Brown, 623 F.3d at 113 n. 5.).  "The court held 'that the proper procedural avenue for defendants who wish to raise ineffective assistance claims after conviction but prior to sentencing is a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33.' " Id. (citing Brown, 623 F.3d at 113 n. 5.).

The danger of prejudice to Mr. Clifford is significant if he fails to present his ineffective assistance of counsel claims before sentencing because, if successful, he will have a new trial.  The efficient handling of his motion creates minimal prejudice to the prosecution.  Mr. Clifford's trial counsel made a proper motion for judgment of acquittal at the close of the government's case.  Mr. Clifford's new counsel has been and is acting in good faith by ordering the trial transcripts, investigating Mr. Clifford's

ineffective assistance of counsel claims, interviewing trial counsel, filing the motion for a new trial, and preserving Mr. Clifford's arguments for appeal.

Mr. Clifford's claims of ineffective assistance include failure by trial counsel to investigate and prepare a defense and use of alcohol by counsel during the course of trial.  The court conducted a hearing and fully developed the record for consideration of Mr. Clifford's motion for new trial before sentencing.  The court finds excusable neglect and the motion for a new trial is timely filed.  Fed. R. Crim. P. 45(b)(1)(B); Boesen, supra.

### **NEWLY DISCOVERED EVIDENCE STANDARD**

"In order to merit a new trial, (1) the newly discovered evidence must have been unknown or unavailable to the defendant at the time of trial; (2) the defendant must have been duly diligent in attempting to uncover it; (3) the newly discovered evidence must be material; and (4) the newly discovered evidence probably will result in an acquittal upon retrial." United States v. Stroud, 673 F.3d 854, 863 (8th Cir. 2012) (referencing United States v. Rubashkin, 655 F.3d 849, 857 (8th Cir. 2011) (citing United States v. Baker, 479 F.3d 574, 577 (8th Cir. 2007))).  "[T]he standard in our circuit for a Rule 33 motion is clear and binding.  The rule requires that the newly discovered evidence 'probably will result in an acquittal.' " Rubashkin, 655 F.3d at 858 (citing Baker, 479 F.3d at 577).

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

To support a claim of ineffective assistance of counsel, a two-prong test must be met.  "A reviewing court's task with respect to attorney performance is to 'determine whether, in light of all the circumstances, the [lawyer's performance was] outside the range of professionally competent assistance.'" Hill v. Lockhart, 28 F.3d 832, 837 (8th Cir. 1994) (quoting Strickland v. Washington, 466 U.S. 668, 690 (1984)).  The burden of establishing ineffective assistance of counsel is on Mr. Clifford, who must "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado v. United States, 162 F.3d 981, 982 (8th Cir. 1998) (citing Strickland, 466 U.S. at 689).  Mr. Clifford "must also prove prejudice by demonstrating that absent counsel's errors there is a reasonable probability that the result of the proceeding would have been different." Id. (citing Strickland, 466 U.S. at 694).

Defendant "faces a heavy burden to establish ineffective assistance of counsel . . . ." DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000) "If the defendant cannot prove prejudice, [the court] need not address whether counsel's performance was deficient." Id.  To establish prejudice, Mr. Clifford "must prove a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different." Id. "Any deficiencies in counsel's performance must be prejudicial to the

defense in order to constitute ineffective assistance under the Constitution."
Strickland, 466 U.S. at 692.  See also Gianakos v. United States, 560 F.3d
817, 821 (8th Cir. 2009) (citing Strickland, 466 U.S. at 691) ("An error by
counsel, even if professionally unreasonable, does not warrant setting aside
the judgment of a criminal proceeding if the error had no effect on the
judgment.").

The court limits its recitation to those facts necessary to resolve the
pending motion.  Each of Mr. Clifford's claims are addressed separately.

**NEWLY DISCOVERED EVIDENCE**

Mr. Clifford asserts the testimony of Craig Chase is "new evidence that
was not available to him at his initial trial." (Docket 103 at p. 3).  Mr.
Chase, his aunt Diane Chase In Winter, and Mr. Clifford testified at the
hearing on the motion for new trial ("new trial hearing").  The following
summary is generated from the new trial hearing testimony unless
otherwise noted.

Mr. Chase is a long-time friend of Mr. Clifford.  Mr. Chase was in the
basement of the Connie Brown residence on the night of the assault alleged
in the indictment, October 16, 2012.  Mr. Chase was intoxicated, having
consumed six Mike's Hard Liquors, a couple of vodka mixed drinks, and
shared a half gallon of vodka.  He started drinking in the morning, drank all
day, and eventually passed out on the couch in the basement of the Brown
residence sometime during the evening.  Mr. Chase woke up to see a woman

10

swinging a silver-edged knife near him.  On a scale of one to ten where one is sober and ten is unconsciousness, Mr. Chase testified he was at a seven or an eight level of intoxication when he woke up.

Using what looked like a kitchen knife the woman stabbed Mr. Chase through the left arm, causing serious bleeding.  He then blacked out.  The next thing Mr. Chase remembered is being outside the Brown residence with someone holding him up.  He vaguely remembers Mr. Clifford helping him up the stairs.

Mr. Chase walked alone to his aunt Diane Chase In Winter's home. She and Lee Folsom bandaged his arm and Mr. Chase passed out.  He did not seek medical attention at the Indian Health Service Hospital Emergency Room that night because of his intoxication.  It is illegal to consume alcohol on the Pine Ridge Indian Reservation.  Mr. Chase testified he was stabbed on the underside (lateral aspect) of his left forearm and during the hearing pointed out a scar to the court.

Mr. Chase testified he is uncomfortable talking to people.  When Bureau of Indian Affairs Special Agent Salazar spoke with him during her investigation, Mr. Chase did not mention anything about being stabbed. When the Federal Public Defender's investigator spoke with him before trial, Mr. Chase did not mention anything about being stabbed in the basement of the Brown residence on the night in question.  When interviewed by Ms. Woods' investigator in preparation for the new trial hearing, Mr. Chase

11

stated he had been stabbed in the arm and Marvin Joe Brave had been stabbed in the back by Ms. Twiss in the basement that evening.

Diane Chase In Winter testified her nephew Craig Chase came to her home on October 12, 2012.  She recalls it was probably late afternoon because the 5 p.m. evening news was on television.  Mr. Chase was intoxicated and complained he had been stabbed in either an accident or a fight, but he could not remember.  She observed two wounds on his left arm–one on the back of the forearm and the second on the side the forearm. The bigger wound was on the inside of the forearm and the smaller wound was on the outside of the forearm.  She described both as stab wounds and not slash wounds.  Using her own arm for illustration purposes, Ms. Chase In Winter pointed out the location of these wounds to the court.  After her husband bandaged Mr. Chase's wounds, her nephew walked away from their home.  Mr. Chase did not pass out in their presence that day.

Defendant Clifford testified that after the incident with Ms. Twiss occurred in the basement, he helped Mr. Chase up the stairs and outside. Once outside he noticed Mr. Chase had been stabbed.  Mr. Clifford knew his friend would not want to be involved so Mr. Clifford did not mention this stabbing to anyone.  He wanted Mr. Chase to come forward on his own and be Mr. Clifford's self-defense witness at trial.  Mr. Clifford testified he did not want to get Mr. Chase involved, but he knew if the investigators would talk to Mr. Chase, the information about being stabbed that evening would come

12

out.  Mr. Clifford was not positive Mr. Chase was injured by Ms. Twiss and did not tell his trial attorney, Mr. Grey, about Mr. Chase's injuries.  Mr. Clifford testified he did not know until after the jury trial that Mr. Chase had been stabbed by Ms. Twiss.

Analyzing the testimony on defendant's newly discovered evidence claim, the court concludes Mr. Chase's testimony was not "unknown or unavailable to the defendant at the time of trial . . . ."  Stroud, 673 F.3d at 863.  To the contrary, Mr. Clifford testified he knew immediately his good friend had been injured in the basement during the incident with Ms. Twiss.[1]  Despite this knowledge, Mr. Clifford was not "duly diligent in attempting to uncover" the nature of Mr. Chase's injury.  Id.  Mr. Clifford was actively engaged in his own defense, seeking to guide his attorney to every witness who would support Mr. Clifford's claim of self-defense.  If Mr. Chase had, in fact, been stabbed by Ms. Twiss in the basement of the Brown residence on October 16, 2012, Mr. Clifford certainly would have asked Mr. Grey to investigate it.

The court finds Mr. Chase's testimony is neither credible nor material to the events occurring on October 16, 2012.  Mr. Chase claims Marvin Joe Brave was stabbed by Ms. Twiss.  At trial, Mr. Brave did not testify he was

---

[1]Mr. Clifford makes no mention of Mr. Chase in the affidavit in support of the motion for new trial.  (Docket 103-4).

injured by Ms. Twiss.  (Docket 97 at pp. 431-50).  At the new trial hearing
Mr. Clifford testified Mr. Brave was not injured by Ms. Twiss.  Ms. Chase In
Winter credibly testified her nephew appeared at her house on October 12 in
the late afternoon with two stab wounds, which is inconsistent with Mr.
Chase's claim of having been stabbed once by Ms. Twiss.  Neither of the
wound locations described by Ms. Chase In Winter were consistent with the
location of the scar Mr. Chase showed the court.  The assault of Ms. Twiss
occurred on October 16, 2012.  (Docket 97 at pp. 63:22-23 & 90:17-21).
The assault was reported to law enforcement around 12:30 a.m. on October
17, shortly after it occurred.  Id. at p. 126:4-5.  This is inconsistent with the
date and time of Mr. Chase's injuries treated by Ms. Chase In Winter.  She
testified Mr. Chase came to her home on October 12, 2012, in the late
afternoon.

Mr. Chase was present in the basement of the Brown residence at the
time of the assault on Ms. Twiss.  Id. at p. 181:10-17.  Mr. Chase was
uncooperative with law enforcement investigating the assault on Ms. Twiss.
Id. at p. 227:16-19.  While Mr. Chase was cooperative with the Federal
Public Defender's investigator, he never mentioned being stabbed by Ms.
Twiss.  It was not until Ms. Woods' investigator was re-interviewing
witnesses that Mr. Chase claimed Ms. Twiss assaulted him.

The court heard the trial testimony and concludes the proffered
testimony of Mr. Chase would not have resulted in an acquittal.  Had Mr.

14

Chase testified at trial as he did during the new trial hearing, the jury likely would have perceived, as does the court, that Mr. Chase was trying to provide false testimony to cover-up the truth of what occurred in the Brown basement.  Mr. Chase's hearing testimony was devised to protect his good friend Mr. Clifford.  <u>Lacey</u>, <u>supra</u>; <u>Campos</u>, <u>supra</u>.

Defendant's motion for a new trial on the basis of newly discovered evidence is denied.

### **INEFFECTIVE ASSISTANCE OF COUNSEL**

Mr. Clifford asserts Mr. Grey was ineffective because he (1) failed to investigate and prepare a defense; and (2) engaged in improper conduct during the course of trial.  (Docket 103 at pp. 3-7).  Each of these claims is addressed separately.

### 1.    **FAILURE TO INVESTIGATE AND PREPARE A DEFENSE**

Mr. Clifford claims his trial attorney failed to interview a number of witnesses, namely Louis Whirlwind Horse, Daniel Tobacco and the night technician at the Pine Ridge Hospital.  <u>Id.</u> at p. 5.  Mr. Clifford argues these witnesses were important to substantiate his claim of self-defense.  <u>Id.</u>

At trial, Ms. Twiss acknowledged she had a folding knife in her possession before the assault began.  (Docket 97 at p. 78:11-12).  The knife was tucked into her tube top.  <u>Id.</u> at p. 81:2-6.  When the knife fell out of her tube top onto the floor, Mr. Clifford became angry.  <u>Id.</u> at p. 79:15-20.  Ms. Twiss testified Mr. Clifford struck her, knocking her to the ground.  <u>Id.</u>

at p. 39:1-11.   While on the ground, she was repeatedly kicked in the head by Mr. Clifford.  Id. at lines 7-16.  Her injuries included severe facial trauma, bruising and swelling.  (Docket 96 at p. 212:14-16; trial exhibits 3, 6, 7, 8, 11, 14, 15, & 18 at p. 1).  A CT scan of her brain at the Pine Ridge Hospital disclosed blood accumulation on Ms. Twiss' brain and an acute fracture of her skull.  (Docket 96 at p. 220:1-16; trial exhibits 19 & 20).  The pain she experienced was ten on a scale of one to ten.  (Docket 97 at p. 43:4-7).

Because of the extent of her injuries, Ms. Twiss was airlifted to the hospital in Rapid City, South Dakota.  Id. at lines 9-12.  Dr. Wittenberg's medical records reflect "[t]he patient has the abrasions to the head and extremities and difficulty to focus with the left eye.  Has a CT scan of the head showing an acute subdural hematoma . . . ."  (Trial exhibit 24 at p. 9).  A neurologist determined Ms. Twiss had not suffered a depressed skull fracture.  (Docket 98 at p. 32:2-5).  Rather, Ms. Twiss suffered a linear fracture of the skull without compression.  Id. at p. 37:21-25.

At trial Marvin Joe Brave testified as a defense witness.  (Docket 97 at p. 174:7-9).  Mr. Brave was in the basement of the Brown residence with Mr. Clifford.  Id. at p. 175:5-10.  Earlier in the evening Mr. Brave fell down the stairs and injured his back and elbow.  Id. at p. 179:21-22.  Later, as he returned to the basement from the upstairs bathroom, he noticed Ms. Twiss had a knife.  Id. at p. 184:3-4.  She appeared to be happy, joking around.

16

Id. at lines 7-19.  Mr. Brave described Ms. Twiss' knife as a four-inch long hunting knife.  Id. at p. 176:5-20.  He testified Mr. Clifford was defending himself from Ms. Twiss.  Id. at p. 178:15-17.  Mr. Clifford gave Ms. Twiss a "pretty hard shove; looked like [Clifford] was defending himself."  Id. at p. 184:20-24.  Once Ms. Twiss was on the ground, Mr. Brave saw her get kicked three times.  Id. at p. 185:5-13.  Those were "one kick and two stomps" by Mr. Clifford.  Id. at lines:14-17.  Mr. Brave became scared and as he left he observed Ms. Twiss lying on the floor, snoring in a pool of blood.  Id. at lines 18-23.  Mr. Brave thought she might be dead, except for the fact she was snoring.  Id. at pp. 185:24-186:3.  Mr. Brave, King Martinez and Defendant Clifford ran up the basement stairs together on their way out of the house.  Id. at p. 186:10-15.

At trial Anita Brown testified she went down into her basement and found Ms. Twiss lying on the floor while Mr. Clifford, Marvin Brave and Craig Brave [Chase] were sitting around the room.  Id. at p. 238:5-18.  Sean Davis came down the stairs behind Ms. Brown.  Id. at p. 240:13-22.  Sean Davis found Ms. Twiss unconscious lying face down in a pool of blood.  (Docket 96 at p. 105:15-22).  He shook her trying to get a response.  Id. at p. 105:12-17.  Ms. Brown saw Ms. Twiss trying to stand up.  (Docket 97 at p. 240:8-9).  Mr. Davis helped Ms. Twiss up and she leaned on him to walk up the steps.  Id. at at p. 241:9-17.

After the men left the basement, Ms. Brown found a three or four-inch long knife with the handle broken off.  Id. at p. 242:8-16.  She did not think it was a folding knife or a jackknife.  Id. at lines 17-19.  Ms. Brown took the knife upstairs, put it in a bag in her hall closet and later, when the closet was cleaned out, the knife was thrown away.  Id. at p. 243:3-9.

Mr. Clifford took the stand at trial.  (Docket 98 at p. 60:5-6).  He testified Ms. Twiss got mad and pulled a knife on Marvin Joe Brave.  Id. at p. 67:6-20.  Mr. Clifford told her to leave because when she is drinking she gets belligerent.  Id. at p. 69:20-24.  Mr. Clifford testified Ms. Twiss turned toward him, cussing and acting like she was going to attack him.  Id. at p. 70:4-9.  Mr. Clifford "kicked her with [his] left leg and [his] right arm."  Id. at lines 15-16.  He "didn't want to get stabbed."  Id. at line 21.  After he kicked her, Ms. Twiss fell face first to the concrete floor.  Id. at p. 71:5-6.  As she started to get up with the knife, Mr. Clifford kicked her hand and she went down to the floor a second time.  Id. at lines 8-12.  When shown trial exhibit 7, a photograph of Ms. Twiss' injuries, Mr. Clifford had no explanation for how she may have injured her right eye.  Id. at p. 72:10-14.  He testified Ms. Twiss may have sustained an injury to her left eye by hitting the concrete. Id. at lines 15-18.  Mr. Clifford denied having stomped on Ms. Twiss.  Id. at pp. 73:4-5; 77:22-24.  Mr. Clifford testified he used reasonable force to defend himself from Ms Twiss.  Id. at p. 75:14-18.

During his testimony at the new trial hearing, Mr. Clifford claimed Attorney Grey did not spend sufficient time with him to review all of the discovery materials and did not ask the right questions during cross-examination of a number of government witnesses, including Ms. Twiss. Mr. Clifford testified Mr. Grey should have been aggressive in challenging Ms. Twiss and Sean Davis about the critical time period between Ms Twiss leaving the Brown residence for her first hospital visit and the second hospital visit.  Mr. Clifford's new trial hearing testimony claimed Ms. Twiss was not hurt at the Brown residence, but was injured by Sean Davis or someone else between the two hospital visits.

Attorney Grey testified at the new trial hearing.  Based on Mr. Clifford's report of the events on the night of October 16, Mr. Grey believed that self-defense was an appropriate trial theory.  Attorney Grey thought Mr. Clifford would make a good witness, Ms. Twiss confirmed she had a knife, and other witnesses' statements were consistent with Mr. Clifford's report Ms. Twiss pulled the knife on him.  Mr. Clifford agreed with this trial strategy.

Mr. Grey testified Mr. Clifford never told him Craig Chase or Marvin Joe Brave were stabbed by Ms. Twiss or that Mr. Clifford was defending them against Ms. Twiss' assault.  When Mr. Grey interviewed Mr. Brave, he never claimed Mr. Chase was stabbed by Ms. Twiss that night.

Mr. Grey thought Louis White Whirl Wind may have been stabbed by Ms. Twiss on a previous occassion.  But Mr. White Whirl Wind could not be found.  Mr. Grey interviewed Daniel Tobacco in an effort to locate Mr. White Whirl Wind, but Mr. Tobacco could not find the witness.  Mr. Grey felt the use of Mr. Tobacco's hearsay testimony about Mr. White Whirl Wind's stabbing by Ms. Twiss could backfire at trial.  There was no direct evidence of an incident between Mr. White Whirl Wind and Ms. Twiss.  Because Mr. Tobacco was in federal custody at the time of trial and there was no reliable testimony to support a claim Ms. Twiss assaulted Mr. White Whirl Wind, Mr. Grey made a trial strategy decision not to call Mr. Tobacco as a self-defense witness.

Mr. Grey contemplated calling the Pine Ridge Hospital technician as a trial witness.  Depending on the severity of Ms. Twiss' injuries, Mr. Grey felt he may be able to argue Ms. Twiss was not seriously injured but was fraudulently seeking access to pain medications.  Mr. Grey reviewed Ms. Twiss' medical records, watched the video recording of Ms. Twiss' interview in the hospital and examined the photographs taken of her injuries.  Mr. Grey concluded the evidence proved the severity of Ms. Twiss' injuries.  The potential defense that she suffered no injuries in the Brown residence but was fraudulently seeking pain medications was not meritorious and the medical technician from the hospital could provide no helpful testimony.  The best strategy was to assert self-defense at trial.

20

Regarding Mr. Clifford's claim the defense should have interviewed Ms. Twiss, Mr. Grey disagreed.  Ms. Twiss had been interviewed by the investigator for the Federal Public Defender's Office on behalf of co-defendant Martinez.  During that interview, Ms. Twiss admitted having a knife during the night of the incident.  Mr. Grey considered this an "ace in the hole," because Ms. Twiss never mentioned the knife in any of her pretrial interviews with law enforcement.  Mr. Grey believed another interview of Ms. Twiss may dilute the strength of this evidence, so he made the tactical decision not to interview Ms. Twiss himself.

Mr. Grey has been in private practice for over nine years.  He has represented hundreds of clients charged with felony offenses in state court and about 20 defendants charged with felonies in federal court.  Mr. Grey was defense counsel in 30 to 35 felony jury trials prior to this case.  Mr. Grey is a member in good standing in the South Dakota State Bar, is admitted in federal court, and is the Criminal Justice Act committee chairman for the Western Division of the District of South Dakota.  He is an active member of the Black Hills Criminal Defense Bar.  Recently, Mr. Grey was certified by the National Board of Trial Advocacy in criminal defense.

Mr. Clifford's complaints about the manner in which Attorney Grey conducted the defense in this case are without merit.  Mr. Clifford's new trial hearing testimony is inconsistent with his trial testimony.  The court finds Mr. Clifford's testimony, both at trial and during the new trial hearing,

not credible.  The court finds Mr. Grey credible in his explanation of trial preparation and the trial strategies he used to defend Mr. Clifford.  <u>Lacey</u>, <u>supra</u>; <u>Campos</u>, <u>supra</u>.

The defendant cannot carry his burden of establishing Mr. Grey was ineffective at trial.  <u>Delgado</u>, 162 F.3d at 982.  Mr. Clifford has not exposed any errors on the part of Mr. Grey which create a reasonable probability that the result of a retrial would be different.  <u>Id.</u>

Mr. Clifford's motion for a new trial on the basis of ineffective assistance of counsel is denied.

### 2.   MR. GREY ENGAGED IN IMPROPER CONDUCT DURING THE COURSE OF TRIAL

Mr. Clifford argues he is entitled to a new trial because Mr. Grey was impaired throughout the course of trial by consuming alcoholic beverages. (Dockets 103 at pp. 6-7; 103-4 at p. 2 ¶ 6).  During his testimony in the new trial hearing, Mr. Grey admitted he consumed part of one beer during lunch while waiting for the jury's verdict.  That afternoon a jury question required a hearing with counsel.  (Docket 74 at p. 8).  During the hearing Mr. Clifford asked his attorney if he had been drinking and Mr. Grey responded "yeah I had a beer."  When examined on this matter at the new trial hearing, Mr. Grey denied drinking at any other time during the course of trial.

The court finds Mr. Clifford's allegations Mr. Grey was drinking throughout the course of trial not credible and Mr. Grey's testimony to be

candid and truthful.  The court conducted a number of bench conferences with counsel, including Mr. Grey, during the course of the four-day trial. (Docket 96 at pp. 116:5-121:8, 224:22-228:21, 232:14-25, 237:9-238:16; Docket 97 at pp. 120:6-123-8, 150:7-151:23, 223:3-225:9, 236:21-237:23, 251:18-254:4; Docket 98 at pp. 9:23-10:23, 38:21-43:18).  These bench conferences required Mr. Grey to lean over the bench and speak into a microphone within inches of the court's space.  Had there been an odor of alcohol on Mr. Grey's breath, the court would have noted it.  At no time during any bench conference or at any other time during the course of trial was there any indication Mr. Grey had been drinking or was under the influence of alcohol.

Mr. Clifford's motion for a new trial on this basis is without merit.

**ORDER**

Based on the above analysis, it is hereby

ORDERED that the defendant's motion for a new trial (Docket 103) is denied.

Dated June 12, 2014.

BY THE COURT:

/s/ Jeffrey L. Viken
JEFFREY L. VIKEN
CHIEF JUDGE